UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS

| | | |
|---|---|---|
| WILLIAM EDWARD HARLEY WALLACE, | : | Case No. 2:24-cv-2755 |
| | : | |
| Plaintiff, | : | |
| | : | District Judge Algenon L. Marbley |
| vs. | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | |
| DR. PATRICK OLABODE, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**REPORT AND RECOMMENDATIONS**[1]

Plaintiff, an inmate at the London Correctional Institution (LOCI), filed a pro se Amended Complaint[2] under 42 U.S.C. § 1983 against the following five Defendants: Dr. Patrick Olabode,[3] Acting Health Care Administrator Kelle Gapen, Acting Institutional Inspector Jim Hildreth, Assistant Chief Inspector Karen Stanforth, and Ohio Department of Rehabilitation and Correction (ODRC) Director Annette Chambers-Smith. The matter is currently before the Court upon Defendants' Motion to Dismiss (Doc. #9), Plaintiff's Response (Doc. #13), and Defendants' Reply (Doc. #14). For the reasons set forth herein, the Court recommends that Defendants' Motion to Dismiss (Doc. #9) be **GRANTED**, in part, and **DENIED**, in part.

**I.    BACKGROUND**

In the Amended Complaint, Plaintiff alleges that, in July 1999, while at the Chillicothe Correctional Institution, he fractured and displaced his right fibula while playing basketball. (Doc.

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.
[2] Plaintiff's Amended Complaint (Doc. #3) is the operative complaint in this case and supersedes Plaintiff's initial complaint (Doc. #s 1-1 – 1-4) for all purposes. *See In re Refrigerant Compressors Antitrust Litig.*, 731 F.3d 586, 589 (6th Cir. 2013); *Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 456 n.4 (2009)).
[3] Although Plaintiff identifies Defendant Olabode as a doctor, he is a Nurse Practitioner.

#3, *PageID* #s 47, 51, 55). Plaintiff further alleges that one month later he tore his left Achilles tendon. *Id.* at 51, 55. According to Plaintiff, x-rays were taken after both of his injuries, and he was told by a non-defendant doctor that he had severe ankle sprains. *Id*. Plaintiff alleges, however, that when MRIs were taken 18 months after his injuries—in response to a state-court medical malpractice lawsuit that he filed—he was diagnosed with a torn left Achilles tendon and a fractured right fibula. *Id*. at 51. Plaintiff also alleges that he developed an infection following his Achilles-tendon surgery and that his Achilles tendon "still doesn't function, to lift [his] body weight." *Id*.

Approximately twenty years after the above events, on August 7, 2020, Plaintiff alleges that, while housed at LOCI, he jumped down from his top bunk, felt immediate pain, and found his left knee to be extremely swollen. *Id.* at 47. Plaintiff alleges that on August 9, 2020, he saw an unidentified nurse, who is not named as a Defendant, and was given an ace bandage and crutches. *Id*. Plaintiff alleges that he saw Defendant Olabode, a Nurse Practitioner, on August 11, 2020. *Id*. Plaintiff states that Olabode removed the ace bandage, observed his knee, had Plaintiff rate his level of pain, instructed Plaintiff to elevate and ice his knee to help with swelling and pain, gave Plaintiff Tylenol or ibuprofen for pain, and ordered X-rays. *Id*. Plaintiff alleges that he returned to see Olabode on August 19, 2020, to review his x-rays and Olabode told him that he had no broken bones and, due to COVID, no further treatment would be done. *Id*. at 47-48.

Plaintiff states that a few months later he returned to see Olabode and to return his crutches. *Id.* at 48. Plaintiff asserts that, at that time, the swelling in his knee had gone down and you could "feel the movement, when [he] bent his left knee, of [his] entire ACL through [his] skin." *Id*. Plaintiff further asserts that he showed the moving ligament to Olabode, but no further treatment was done. *Id*. Plaintiff allege that he saw Olabode again on December 21, 2021, for complaints of knee and leg pain. *Id.* According to Plaintiff, Olabode scheduled him for x-rays that he never

received. *Id*.

Plaintiff alleges that on February 21, 2022, he hurt his right knee during a stationary bike rehabilitation workout. *Id*. at 48. Plaintiff alleges that he saw Olabode on March 1, 2022, but that there was no physical exam or x-rays ordered. *Id*.

Plaintiff alleges that on April 28, 2022, he sent a medical request about his legs and requested that MRIs be done. *Id*. Plaintiff asserts that he saw Olabode on May 3, 2022, and that x-rays were ordered. *Id*. Plaintiff states that he received x-rays of both knees and his right ankle on May 4, 2022. *Id*. Plaintiff alleges that he saw Olabode again on May 5, 2022, and that Olabode told him that he had degenerative disease in both knees, that nothing was wrong with his right ankle, and that MRIs would not be ordered. *Id*. Plaintiff contends, however, that Olabode did not "perform any of the 7 ligament of bone structure stress tests that are standard in knee examination," and he did not have access to the x-ray images or review Plaintiff's medical history. *Id*. Plaintiff further contends that he showed Olabode the wear patterns on his shoes, but Olabode did not take any action. *Id*.

Plaintiff claims that he saw Defendant Gapen on May 17, 2022, in response to an informal complaint that he filed on May 16, 2022. *Id*. at 48. Gapen allegedly stated that she had reviewed Plaintiff's medical records. *Id*. According to Plaintiff, Gapen should then have been aware that he had a fractured and displaced right fibula that had been missed on x-rays in 1999 but later found on an MRI eighteen months later. *Id*. Plaintiff further alleges that, had Gapen asked, he would have shown her the wear pattern on his shoes. *Id*. He claims that Gapen, like Olabode, only shared with him the x-ray reports and not the actual x-rays. *Id*. at 48. Plaintiff contends that he learned how to read x-rays in the Navy, where he was a dental technician and had assisted with medical duty. *Id*. Plaintiff states that Gapen, like Olabode, also did not perform any of the 7 ligament of

3

bone structure stress tests that are standard in knee examinations. *Id*.

Plaintiff asserts that when Gapen denied his informal complaint, he submitted a grievance to Defendant Hildreth on May 26, 2022. *Id*. at 49, 51. According to Plaintiff, Hildreth, who allegedly is not a medical professional, improperly denied his grievance by relying on Olabode's and Gapen's findings and without reviewing Plaintiff's medical history, interviewing him in person, or examining him. *Id*. at 49.

Thereafter, Plaintiff appealed the decision to Defendant Stanforth. *Id*. Plaintiff claims that Stanforth improperly denied his grievance appeal, despite giving her his medical history and describing the issues he was having with his right knee and ankle. *Id*. He alleges that he was not taking over-the-counter pain medications or vitamins at the time of his grievance appeal because he had not found them helpful. *Id*.

Finally, Plaintiff alleges that Defendant Chambers-Smith oversees ODRC policies, that her office "has the final word on who gets what treatment," and that she supervises the other four Defendants in this case. *Id*. at 50. Plaintiff provides three examples of white inmates whom he claims have received better medical care than he has and alleges that he believes that "race has . . . played a part in the past and . . . still does now in the type and timing of the treatment [he's] received." *Id*. at 50, 52.

For relief, Plaintiff seeks monetary and injunctive relief. *Id*. at 47.

## II. STANDARD OF REVIEW

The Federal Rules of Civil Procedure provide that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief...." Fed. R. Civ. P. 8(a)(2). While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations' ... it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662,

678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955).

A motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal for "failure to state a claim upon which relief can be granted." In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679, 129 S.Ct. 1937 (alteration in original) (citing Fed. R. Civ. P. 8(a)(2)).

In determining a motion to dismiss, the Court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). If more than one inference may be drawn from an allegation, this Court must resolve the conflict in favor of the plaintiff. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). However, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932 (1986)). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

While *pro se* parties must satisfy basic pleading requirements, *Wells v. Brown,* 891 F.2d 591, 594 (6th Cir. 1989), their pleadings must be liberally construed and are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). Nevertheless, "even a *pro se* complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Ogle v. Columbia Gas Transmission, LLC,* 513 F. App'x 520, 522 (6th Cir. 2013) (citing *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937).

### III. DISCUSSION

In their Motion to Dismiss, Defendants assert that Plaintiff's claims should be dismissed because they are barred by the statute of limitations. (Doc. #9, *PageID* #119). Further, Defendants argue Plaintiff's claims against Defendants Gapen, Hildreth, and Stanforth should be dismissed because prisoners do not possess a constitutional right to a prison grievance procedure. *Id.* at 123 (citations omitted). Finally, Defendants contend that Plaintiff's claims against Defendant Chambers-Smith should be dismissed because there are no specific factual allegations showing that she was personally involved in any of the unconstitutional conduct that Plaintiff alleges. *Id.* at 125-26.

#### A. Statute of Limitations

Defendants assert that Plaintiff's claims respecting the 1999 fracture and displacement of his right fibula, the 1999 tear of his left Achilles tendon, and the 2020 tear of his left ACL and meniscus should be dismissed because they are barred by the statute of limitations. (Doc. #9, *PageID* #119). However, Plaintiff clarifies in his Response that he is "no longer concerned" with injuries or treatment he received from 1999 to 2001. (Doc. #13, *PageID* #135). Plaintiff

explains that he only included that information to "give [] the court some background and history on the treatment [he] did and did not receive …." *Id.*

Limitations periods in § 1983 suits are to be determined by reference to the appropriate state statute of limitations and the coordinate tolling rules. *Hardin v. Straub,* 490 U.S. 536, 539, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989) (citing *Board of Regents, University of New York v. Tomiano,* 446 U.S. 478, 484, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980)). Plaintiff's action is governed by Ohio's two-year statute of limitations applicable to personal injury claims. *See, e.g., Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989) (holding that the "appropriate statute of limitations for 42 U.S.C. § 1983 civil rights actions arising in Ohio is contained in Ohio Rev. Code § 2305.10, which requires that actions for bodily injury be filed within two years after their accrual").

This statute of limitations begins to run on 42 U.S.C. § 1983 claims when the plaintiff knows or has reason to know of the injury that is the basis of the action. *Kelly v. Burks*, 415 F.3d 558, 561 (6th Cir. 2005). For the purposes of this Report and Recommendation, the Court will presume that the Amended Complaint relates back to the original Complaint, *see* Fed. R. Civ. P. 15(c)(1)(B), and deem it filed as of the date Plaintiff signed the original Complaint. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (applying mailbox rule and noting presumption that the signing date on a pro se prisoner's pleading constitutes the date the prisoner delivered the pleading to prison authorities). Here, Plaintiff signed the original complaint on May 6, 2024. (Doc. #1-1, *PageID* #21). Thus, absent tolling, the relevant statute of limitations bars any claims stemming from incidents occurring prior to May 6, 2022. *See Rucker v. Lindamood*, No. 1:16-CV-00090, 2022 WL 3701597, at *14 (M.D. Tenn. Aug. 26, 2022) (finding that the "continuing violation theory did not reach defendants' conduct outside the limitations period").

7

In this case, Plaintiff filed an informal complaint concerning the alleged incidents of April 28, 2022, May 3, 2022, and May 5, 2022, on May 16, 2022. *See* Doc. #1-1, *PageID* #s 54-55. His grievances remained pending before prison officials until July 11, 2022. *See id*. Because the statute of limitations for these incidents was tolled during the time Plaintiff' grievances were pending, *see Brown v. Morgan*, 209 F.3d 595, 596-97 (6th Cir. 2000), the Court finds this lawsuit timely as to the events allegedly occurring on April 28, 2022, and thereafter.  However, the events about which Plaintiff complains that occurred prior to April 28, 2022, cannot form the basis for a timely § 1983 claim. *See Kelly*, 415 F.3d at 561; *Browning*, 869 F.2d at 992.

Thus, to the extent that Plaintiff brings claims against Defendants regarding the 1999 fracture and displacement of his right fibula and the 1999 tear of his left Achilles tendon, those claims are barred by the statute of limitations. Accordingly, the undersigned recommends that those claims be **DISMISSED**. Furthermore, to the extent that Plaintiff brings claims regarding the 2020 tear of his left ACL and meniscus (*see* Doc. #3, *PageID* #47), those claims are barred by the statute of limitations. Accordingly, the undersigned recommends that those claims be **DISMISSED**.

However, Plaintiff's claims related to Defendant Olabode's treatment of his knees and right ankle beginning in May 2022 are not barred by the statute of limitations. Accordingly, the undersigned recommends that Defendants' request to dismiss these claims be **DENIED**.

B. **Denial of Grievances**

Defendants assert, "because Plaintiff fails to show that Defendants Gapen, Hildreth, or Stanforth engaged in any conduct other that the denial of his grievances, they should be dismissed from this lawsuit." (Doc. #9, *PageID* #125). According to Plaintiff, these Defendants "had a hand in delaying my treatment, and once again causing irreversible damage leading to serious

8

consequences. … They also failed to investigate enough to make an informed judgement." (Doc. #13, *PageID* #136).

It is well established that a plaintiff cannot maintain a claim based solely on the denial of a grievance or the failure to act. *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir. 1999); *see Lee v. Michigan Parole Bd.,* 104 F. App'x 490, 493 (6th Cir. 2004) ("liability may not be imposed simply because a defendant denied an administrative grievance"); *Martin v. Harvey,* 14 F. App'x 307, 309 (6th Cir. June 7, 2001) (affirming dismissal of the claims against a defendant whose only involvement in the matters giving rise to the § 1983 action was his denial of the appeal of the plaintiff-prisoner's grievance). Here, Plaintiff alleges that Defendant Gapen denied his informal complaint, Defendant Hildreth denied his grievance, and Defendant Stanforth denied his appeal. (Doc. #3, *PageID* #s 48-49). Because Defendants' only involvement with Plaintiff was the denial of administrative remedies, the undersigned recommends that Plaintiff's claims against them be **DISMISSED**.

### C. Supervisory Liability

Defendants argue that Plaintiff's claims against Defendant Chambers-Smith should be dismissed because the Amended Complaint "fails to allege any facts suggesting that [she] directly participated in and/or authorized, approved or acquiesced in the alleged violations of Plaintiff's constitutional rights." (Doc. #9, *PageID* #126). In Plaintiff's Response, he indicates that after further research, he agrees that Defendant Chambers-Smith should be dismissed. (Doc. #13, *PageID* #137). Accordingly, the undersigned recommends that Plaintiff's claims against Defendant Chambers-Smith be **DISMISSED**.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Defendants' Motion to Dismiss (Doc. #9) be **GRANTED**, in part, and **DENIED**, in part, as set forth above;

2. Plaintiff's claims related to Defendant Olabode's treatment prior to April 28, 2022 be **DISMISSED**; and

3. Plaintiff's claims against Defendants Gapen, Hildreth, Stanforth, and Chambers-Smith be **DISMISSED.**

July 29, 2025

*s/Peter B. Silvain, Jr.*
Peter B. Silvain, Jr.
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).