### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| WILLIAM EDWARD HARLEY WALLACE, | : |
| Plaintiff, | : Case No. 2:24-cv-2755 |
| v. | : Judge Algenon L. Marbley |
| | : Magistrate Judge Peter B. Silvain |
| DR. PATRICK OLABODE, *et al.*, | : |
| Defendants. | : |

## ORDER

This matter comes before this Court on the Magistrate Judge's Report and Recommendation (ECF No. 15) that Defendants Patrick Olabode, Kelle Gapen, Jim Hildreth, Karen Stanforth, and Annette Chambers-Smith's Motion to Dismiss (ECF No. 9) be granted in part and denied in part.  Specifically, the Magistrate Judge recommended that this Court dismiss Plaintiff's claims related to Defendant Olabode's treatment prior to April 28, 2022; and dismiss Plaintiff's claims against Defendants Gapen, Hildreth, Stanforth, and Chambers-Smith.  (*See* ECF No. 15 at 10).  The parties were specifically advised of the right to object to the Report and Recommendation within fourteen days and of the consequences of their failure to do so.  (*Id.* at 11). No objection has been filed, and the deadline to do so expired on August 12, 2025.

For the reasons set forth below, this Court **ADOPTS** the R&R in its entirety. (ECF No. 15).  Defendants' Motion to Dismiss (ECF No. 9) is **GRANTED IN PART** and **DENIED IN PART** as outlined in the R&R and below. (ECF No. 15).

### I. BACKGROUND

Plaintiff William Edward Harley Wallace, an inmate at the London Correctional Institution (LOCI) proceeding *pro se*, brings this action under 42 U.S.C. § 1983 against Defendants Patrick

Olabode;[1] Acting Health Care Administrator Kelle Gapen; Acting Institutional Inspector Jim Hildreth; Assistant Chief Inspector Karen Stanforth; and Ohio Department of Rehabilitation and Correction (ODRC) Director Annette Chambers-Smith, alleging that Defendants were deliberately indifferent to his medical needs and unconstitutionally denied his administrative grievances.

This Court recites Plaintiff's allegations as stated in the R&R, to which neither party has objected. (*See* ECF No. 15 at 1–4).

### A. Plaintiff's Allegations

In his Amended Complaint, Plaintiff avers that, in July 1999, while at the Chillicothe Correctional Institution, he fractured and displaced his right fibula while playing basketball. Plaintiff further alleges that one month later he tore his left Achilles tendon. According to Plaintiff, x-rays were taken after both of his injuries, and he was told by a non-defendant doctor that he had severe ankle sprains. Plaintiff alleges, however, that when MRIs were taken 18 months after his injuries—in response to a state-court medical malpractice lawsuit that he filed—he was diagnosed with a torn left Achilles tendon and a fractured right fibula. Plaintiff also alleges that he developed an infection following his Achilles-tendon surgery and that his Achilles tendon "still doesn't function, to lift [his] body weight."

Approximately twenty years after the above events, on August 7, 2020, Plaintiff alleges that, while housed at LOCI, he jumped down from his top bunk, felt immediate pain, and found his left knee to be extremely swollen. Plaintiff alleges that on August 9, 2020, he saw an unidentified nurse, who is not named as a Defendant, and was given an ace bandage and crutches. Plaintiff alleges that he saw Defendant Olabode, a Nurse Practitioner, on August 11, 2020. Plaintiff states that Olabode removed the ace bandage, observed his knee, had Plaintiff rate his

---

[1] Although Plaintiff identifies Defendant Olabode as a doctor, he is a Nurse Practitioner.

2

level of pain, instructed Plaintiff to elevate and ice his knee to help with swelling and pain, gave Plaintiff Tylenol or ibuprofen for pain, and ordered X-rays. Plaintiff alleges that he returned to see Olabode on August 19, 2020, to review his x-rays and Olabode told him that he had no broken bones and, due to COVID, no further treatment would be done.

Plaintiff states that a few months later he returned to see Olabode and to return his crutches. Plaintiff asserts that, at that time, the swelling in his knee had gone down and you could "feel the movement, when [he] bent his left knee, of [his] entire ACL through [his] skin." Plaintiff further asserts that he showed the moving ligament to Olabode, but no further treatment was done. Plaintiff allege that he saw Olabode again on December 21, 2021, for complaints of knee and leg pain. According to Plaintiff, Olabode scheduled him for x-rays that he never received.

Plaintiff alleges that on February 21, 2022, he hurt his right knee during a stationary bike rehabilitation workout. Plaintiff alleges that he saw Olabode on March 1, 2022, but that there was no physical exam or x-rays ordered. Plaintiff alleges that on April 28, 2022, he sent a medical request about his legs and requested that MRIs be done. Plaintiff asserts that he saw Olabode on May 3, 2022, and that x-rays were ordered. Plaintiff states that he received x-rays of both knees and his right ankle on May 4, 2022. Plaintiff allegedly saw Olabode again on May 5, 2022, and Olabode told him that he had degenerative disease in both knees, that nothing was wrong with his right ankle, and that MRIs would not be ordered. Plaintiff contends, however, that Olabode did not "perform any of the 7 ligament of bone structure stress tests that are standard in knee examination," and he did not have access to the x-ray images or review Plaintiff's medical history. Plaintiff further contends that he showed Olabode the wear patterns on his shoes, but Olabode did not take any action.

Plaintiff claims that he saw Defendant Gapen on May 17, 2022, in response to an informal complaint that he filed on May 16, 2022. Gapen allegedly stated that she had reviewed Plaintiff's medical records. According to Plaintiff, Gapen should then have been aware that he had a fractured and displaced right fibula that had been missed on x-rays in 1999 but later found on an MRI eighteen months later. Plaintiff further alleges that, had Gapen asked, he would have shown her the wear pattern on his shoes. He claims that Gapen, like Olabode, only shared with him the x-ray reports and not the actual x-rays. Plaintiff contends that he learned how to read x-rays in the Navy, where he was a dental technician and had assisted with medical duty. Plaintiff states that Gapen, like Olabode, also did not perform any of the 7 ligament of bone structure stress tests that are standard in knee examinations.

Plaintiff asserts that when Gapen denied his informal complaint, he submitted a grievance to Defendant Hildreth on May 26, 2022. According to Plaintiff, Hildreth, who allegedly is not a medical professional, improperly denied his grievance by relying on Olabode's and Gapen's findings and without reviewing Plaintiff's medical history, interviewing him in person, or examining him. Plaintiff then appealed the decision to Defendant Stanforth. Plaintiff claims that Stanforth improperly denied his grievance appeal, despite giving her his medical history and describing the issues he was having with his right knee and ankle. He alleges that he was not taking over-the-counter pain medications or vitamins at the time of his grievance appeal because he had not found them helpful.

Finally, Plaintiff alleges that Defendant Chambers-Smith oversees ODRC policies, that her office "has the final word on who gets what treatment," and that she supervises the other four Defendants in this case. Plaintiff provides three examples of white inmates whom he claims have received better medical care than he has and alleges that he believes that "race has . . . played a

part in the past and . . . still does now in the type and timing of the treatment [he's] received." He seeks monetary and injunctive relief.

### B. Procedural History

Plaintiff filed this action on May 21, 2024. (ECF No. 1). On July 11, 2024, he filed an Amended Complaint. (ECF No. 3). On February 26, 2025, Defendants moved to dismiss the Amended Complaint. (ECF No. 9). Plaintiff opposed (ECF No. 13), and Defendants replied (ECF No. 14). On July 29, 2025, the Magistrate Judge issued a Report and Recommendation that Defendants' motion be denied in part and granted in part. (ECF No. 15). The R&R further advised the parties that failure to object to the R&R within fourteen days "may forfeit rights on appeal." (*Id.* at 11). No party has objected to the R&R and the time for doing so expired on August 12, 2025.

## II. LAW & ANALYSIS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(3), a district court conducts a *de novo* review of those portions of the report and recommendation to which the parties have objected. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). "When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *See* Fed. R. Civ. P. 72(b) advisory committee's note; *Thomas v. Arn*, 474 U.S. 140, 150 (1985). ("It does not appear that Congress intended to require district court review of a magistrate judge's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings.").

Having reviewed the R&R, this Court finds no clear error with the Magistrate Judge's analysis and conclusion. First, the Magistrate Judge correctly observed that Plaintiff's § 1983 action is governed by Ohio's two-year statute of limitations applicable to personal injury claims, which began to run no later than April 28, 2022. *See Browning v. Pendleton*, 869 F.2d 989, 992

(6th Cir. 1989) (holding that the "appropriate statute of limitations for 42 U.S.C. § 1983 civil rights actions arising in Ohio is contained in Ohio Rev. Code § 2305.10, which requires that actions for bodily injury be filed within two years after their accrual"); *Kelly v. Burks*, 415 F.3d 558, 561 (6th Cir. 2005). Accordingly, claims regarding the 1999 fracture and displacement of Plaintiff's right fibula; the 1999 tear of his left Achilles tendon; and the 2020 tear of his left ACL are therefore barred by the statute of limitations and must be dismissed.[2]

Secondly, the Magistrate Judge properly recommended dismissal of Plaintiff's claims against Defendants Gapen, Hildreth, Stanforth, and Chambers-Smith. As the Magistrate Judge reasoned, Defendants Gapen, Hildreth, and Stanforth's only involvement with Plaintiff was the denial of administrative remedies. *See Martin v. Harvey*, 14 F. App'x 307, 309 (6th Cir. June 7, 2001) (affirming dismissal of the claims against a defendant whose only involvement in the matters giving rise to the § 1983 action was his denial of the appeal of the plaintiff-prisoner's grievance). As to Defendant Chambers-Smith, Plaintiff's response to Defendants' motion agreed that she should be dismissed.

Finding no clear error in the Magistrate Judge's findings and conclusions, and absent any objections, this Court **ADOPTS** the Report and Recommendation. (ECF No. 15)s.

### III. CONCLUSION

For the reasons set forth above, this Court **ADOPTS** the R&R (ECF No. 15) and **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss (ECF No. 9). Plaintiff's claims related to Defendant Olabode's treatment prior to April 28, 2022 are hereby **DISMISSED**; and

---

[2] By contrast, the Magistrate Judge found claims related to Defendant Olabode's treatment of Plaintiff after April 28, 2022—including his treatment of Plaintiff's knees and right ankle beginning in May 2022—timely and recommended denying Defendants' motion to dismiss these claims.

Plaintiff's claims against Defendants Gapen, Hildreth, Stanforth, and Chambers-Smith are likewise **DISMISSED**.

      **IT IS SO ORDERED.**

                                                    **ALGENON L. MARBLEY**
                                                    **UNITED STATES DISTRICT JUDGE**

**DATED:  September 5, 2025**